UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-159-TEJ-DCK

| | |
|---|---|
| SEPIDEH L. GHADRDAN, et al., ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| KRISTI NOEM, et al., ) | |
| ) | |
| Respondents. ) | |

On February 12, 2024, Petitioners Sepideh Ghadrdan, Nika Barhagh, and Gholamhossein Barhagh (collectively, "Petitioners") filed a Petition seeking judicial review of the United States Citizenship and Immigration Service's ("USCIS") denials of their naturalization applications, pursuant to 8 U.S.C. § 1421(c). (ECF No. 1.) On March 29, 2024, Respondents filed the pending Motion to Dismiss, in which they argue the Court lacks subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 10.) The motion was referred to United States Magistrate Judge David C. Keesler pursuant to 28 U.S.C. § 636(b). On June 11, 2025, Magistrate Judge Keesler filed a memorandum and recommendations ("M&R"), recommending that this Court deny the Respondents' Motion to Dismiss. (ECF No. 19.) The M&R further recommends either conducting a hearing on the petition or, in the alternative, staying this matter until the underlying removal proceedings are complete. (*Id.* at 15.)

Objections to the M&R were due on June 26, 2025. (*Id.* at 19.) On June 24, 2025, both Respondents and Petitioners filed objections to the M&R, (*see* ECF Nos. 20–21), and responses in opposition to each respective objection, (*see* ECF Nos. 22–23). However, neither party disagrees with Magistrate Judge Keesler's findings or recommendations. (*See id.*) Instead, Respondents

1

support the M&R's recommendation to stay this matter pending the underlying removal proceedings, (ECF Nos. 20, 22), and Petitioners support the M&R's recommendation to conduct a hearing on their Petition, (ECF Nos. 21, 23).

For the reasons discussed more fully herein, the Court **OVERRULES** the objections, (ECF Nos. 20–21), **ADOPTS** the M&R, (ECF No. 19), and **DENIES** the Respondents' Motion to Dismiss, (ECF No. 10).

## I. BACKGROUND

A detailed recitation of the facts of this action can be found in the Magistrate Judge's M&R. (ECF No. 19.) Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. (*See* ECF Nos. 20–23.) Therefore, the Court adopts the facts as set forth in the M&R and will provide a discussion of any relevant facts as necessary throughout this opinion.

## II. LEGAL STANDARD

This Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of *de novo* review. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## III. DISCUSSION

As neither party objects to any specific finding in the M&R, the Court **OVERRULES** the objections, (*see* ECF Nos. 20–23), and **ADOPTS** the M&R, (ECF No. 19). Thus, the only issue

2

that remains is whether this matter should be stayed pending the Petitioners' deportation proceedings. As discussed below, a stay is not appropriate.

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Georgia Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) (citing *Landis*, 299 U.S. at 254). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (quoting *Landis*, 299 U.S. at 254–55). "In other words, the court should consider whether the movant has demonstrated 'a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay' will harm someone else." *White v. Ally Fin. Inc.*, 969 F.Supp.2d 451, 462 (S.D. W. Va. 2013) (quoting *Williford*, 715 F.2d at 127).

In this case, Respondents give four reasons why a stay is appropriate. (*See* ECF No. 22.) Petitioners disagree with each reason. (*See* ECF No. 23.) Each argument is addressed below.

### A. Priority of Proceedings

First, Respondents assert that Congress "prioritized removal proceedings over naturalization." (ECF No. 22 at 5–6 (citing 8 U.S.C. § 1429).) Conversely, Petitioners argue that "Congress enacted § 1429 to prevent USCIS from naturalizing individuals while removal proceedings are pending—not to limit the power of federal courts conducting *de novo* review under

3

§ 1421(c)." (ECF No. 23 at 3.) The Court agrees with Petitioners.[1]

An alien seeking naturalization first submits application materials to the USCIS, an agency within the Department of Homeland Security ("DHS"). *See* 8 U.S.C. §§ 1421(a), 1446. Removal proceedings are also initiated by DHS and conducted by immigration judges appointed by the Attorney General. *See* 8 U.S.C. §§ 1101(b)(4), 1227, 1229a(a). Congress has also enacted a "priority provision," which provides the following prohibition: "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." 8 U.S.C. § 1429.

While the executive branch has primary authority over who becomes a citizen and who faces removal, the judiciary also plays an important role. If a naturalization application has been denied, an applicant may petition for a *de novo* review of the denial in district court after a hearing before an immigration officer under section 1447(a). 8 U.S.C. § 1421(c). "The court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*[2]

While § 1429 prevents "*the Attorney General*" from considering an application for naturalization if a removal proceeding is pending, it is silent about what courts can or cannot do. *See* 8 U.S.C. § 1429 (emphasis added). Indeed, "[t]here is no hint in the language of § 1429 that it also applies to the courts." *Kuffour v. Nielsen*, 412 F. Supp. 3d 581, 590 (M.D.N.C. 2019) (internal

---

[1] Respondents also claim that "courts routinely stay naturalization proceedings to give priority to removal proceedings." (ECF No. 20 at 4 (collecting out of circuit cases); ECF No. 22 at 8 (same).) Conversely, Petitioners argue that "none of the cases cited by Respondents involve the fact pattern presented here—where Petitioners' naturalization applications were fully adjudicated and denied, and judicial review under 8 U.S.C. § 1421(c) was properly invoked before removal proceedings commenced." (ECF No. 21 at 7–8.)
[2] The judiciary has additional oversight in cases of delay in naturalization determinations and deportation, respectively. *See* 8 U.S.C. § 1447(b) (authorizing, in cases in which an application for naturalization is not addressed within 120 days, a district court to "either determine the matter or remand the matter"); 8 U.S.C. § 1252 (authorizing judicial review of the "administrative record on which [an] order of removal is based").

quotations and citations omitted).  Further, § 1421(c) is clear that a district court judge "shall" make its own findings of fact and conclusions of law, apart from whatever the agency determined.  8 U.S.C. § 1421(c).

Respondents are not arguing that the Court lacks jurisdiction pursuant to § 1429.  (*See* ECF Nos. 20, 22.)  Instead, the argument seems to be that Congress's directive that the Attorney General prioritize deportation proceedings over naturalization proceedings is persuasive authority, even if it is not controlling over the judiciary.  To that extent, the Fourth Circuit has said as much.  *Barnes v. Holder*, 625 F.3d 801, 805 (4th Cir. 2010) ("Congress clearly intended to give removal proceedings priority over naturalization.")

However, the Fourth Circuit's recognition of deportation priority was given in the context of the right to judicial review when a noncitizen files a naturalization application *after* removal proceedings have already begun.  *See id.* at 806–07 (reasoning because an alien in removal "does not have a right to have his application *adjudicated* . . . he cannot possibly have a right to have the *adjudication* judicially reviewed" (emphasis added)).  This reasoning does not translate to the present fact pattern, where the Petitioners' applications have already been adjudicated and judicial review has already been requested *before* removal proceedings commenced.  Such an application would permit an agency of the executive branch to divest a federal district court of its congressionally authorized power at any point in the proceeding, even when all statutory requirements are met.[3]  *Cf. Etape v. Chertoff*, 497 F.3d 379, 383 (4th Cir. 2007) ("Nothing in the statute suggests that Congress intended that an agency could subvert Congress' choice to vest the district court with jurisdiction to 'determine the matter' once an applicant files a timely § 1447(b) petition.").  The separation of

---

[3] In fact, Petitioners assert that the Government initiated the removal proceedings "solely to frustrate Petitioners' access to judicial review," which is "a tactic that courts have consistently condemned."  (ECF No. 21 at 6; *see also* ECF No. 23 at 7 (claiming that the Respondents' charges are "pretextual" and "plainly issued to derail judicial review").)  The Government does not take kindly to this allegation, which it describes as "wholly erroneous and speculative" and "insufficient to deny request for a stay."  (ECF No. 22 at 1–4.)

5

powers does not allow such subversion.

Rather, the legislative history and the Fourth Circuit's reasoning in *Etape v. Chertoff* are more illuminating as to Congress's intent. For much of the twentieth century, the courts had "exclusive jurisdiction to naturalize persons as citizens of the United States," while the Attorney General oversaw the removal process. *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 310, 66 Stat. 163, 239 (1952); *see also Chertoff*, 497 F.3d at 385–87 (providing a detailed legislative history). However, this created an issue: once removal proceedings commenced, a "race" would ensue "between the alien to gain citizenship" through the courts "and the Attorney General to deport him." *See Shomberg v. United States*, 348 U.S. 540, 544 (1955). To resolve this problem, Congress added the priority provision, which read: "[N]o petition for naturalization shall be finally heard by a naturalization court if there is pending . . . a deportation proceeding . . . ." Internal Security Act of 1950, Pub. L. No 81-831, § 27, 64 Stat. 987, 1015 (1950).

In 1990, Congress amended the immigration laws again by shifting authority over naturalization from the judiciary to the Attorney General. *See* 8 U.S.C. § 1421(a). Congress also amended the text of § 1429 to substitute the words "considered by the Attorney General" for "finally heard by a naturalization court." *See* Immigration Act of 1990, Pub. L. No. 101-649, § 407(d)(3)(A), 104 Stat. 4978, 5041 (1990). Nevertheless, "Congress recognized the long-standing power the district courts had possessed over naturalization applications and so provided in the new statute that district courts retained their power to review an application if an applicant so chose." *Chertoff*, 497 F.3d at 386. Thus, 8 U.S.C. § 1421(c) "ensures that district courts retain the final word on naturalization applications." *Id.*

"Congress included this provision because it did not want to 'take away any of the judicial review rights accorded applicants' in the predecessor legislation." *Id.* (citing 135 Cong. Rec. H4542). Thus, rather than remove the judiciary from the equation altogether, Congress "specifically

6

*retained* district courts' power to adjudicate naturalization applications, at a time when Congress could easily have eliminated that power." *Id.* at 387 (holding that the petitioners' § 1447(b) petitions were not mooted by USCIS's denial of the same because the civil action was filed first). Ultimately, "it is the applicant, not the government, who decides the place and the setting and the timeframe in which the application will be processed." *Id.* (emphasis removed) (discussing § 1447(b) petitions).

Consequently, the legislative history indicates Congress's intention of protecting applicants' rights via court review. Ignoring the Court's clear statutory authority and permitting USCIS to be the sole arbiter of naturalization and deportation would do the opposite.

### B. *Factual Determinations*

Second, Respondents claim that factual determinations made during the removal proceedings could have an effect on the merits of the Petitioners' naturalization applications. (ECF No. 22 at 5–6.) Specifically, the removal proceedings will determine whether the Petitioners "abandoned and failed to maintain their Lawful Permanent Resident ["LPR"] status when they re-entered the United States," which is a factual dispute in this pending civil action. (*Id.* at 6–7.) "Third and relatedly," if the Immigration Judge finds that Petitioners "failed to maintain LPR status *and as a result did not possess valid suitable travel documents*," the Petitioners will be "ineligible to naturalize." (*Id.* at 7 (emphasis added).) On the other hand, if the Immigration Judge finds that Petitioners did not abandon their LPR status, the Respondents will review the Petitioners' eligibility to naturalization and "the relief pursued in this action will be unavailable." (*Id.*) In response, Petitioners claim that these factual assertions are "baseless," "factually incorrect," and "demonstrably false." (ECF No. 23 at 6–7.)

Ultimately, the Respondents' argument fails to explain why this Court cannot make those determinations. Respondents agree that the Court has jurisdiction to review Petitioners' naturalization denial. (*See* ECF No. 20.) Further, the Court reviewing a naturalization denial "*shall*

7

make its own findings of fact and conclusions of law." 8 U.S.C. § 1421 (emphasis added). So, why exactly should the Court wait months—maybe years—to receive answers it can determine for itself?

The Court's power to make these findings and conclusions are not extinguished simply because the USCIS wants to make these precise determinations at some point in the future. Rather, "district courts retain the final word on naturalization applications." *Chertoff*, 497 F.3d at 386. Thus, in accordance with the statute, the Court will make its own findings of fact and conclusions of law instead of deferring to the Immigration Judge's determinations, to be made at some unknown date in the future.

### C. Prejudice

Fourth, Respondents argue that a stay would not prejudice the Petitioners because "[w]hile the Immigration Judge decides whether Plaintiffs abandoned their LPR status or not, Plaintiffs' status will continue to be unchangeable." (ECF No. 22 at 8.) This argument fails because, as discussed above, the Court has the authority to review naturalization decisions. It does not have to defer to the Immigration Judge's determinations.

In fact, Respondents would face minimal prejudice absent a stay *because of* the Court's authority to make these determinations. If Petitioners prevail in this civil action, the deportation proceeding may very well be mooted. In the alternative, should the Petitioners fail, the deportation proceeding will be focused and more suitable for resolution. Neither outcome prejudices the Respondents or causes them any notable hardship.

Conversely, Petitioners assert that a stay would cause prejudice in terms of an undue delay in relief. Specifically, Petitioners reason that they "are not scheduled to appear for a Master Calendar hearing until November 2025," "[n]o Individual Hearing (merits trial) is even scheduled, and it is not unusual for such cases to remain unresolved for several more years." (ECF No. 23 at 7.) In the meantime, Petitioners cannot "travel internationally without risking a finding of abandonment of

8

Case 3:24-cv-00159-TEJ-DCK    Document 25    Filed 07/23/25    Page 8 of 9

their LPR status," cannot vote, and "may face professional or personal consequences from a pending removal action." (*Id.* at 7–8.) Whereas under 8 U.S.C. § 1421(c), "a *de novo* hearing in federal court [] could be completed in a single hearing of under two hours, with final judgment shortly thereafter." (*Id.*)

Indeed, ignoring Petitioners' statutory right to *de novo* review of the denial of their naturalization requests and suspending them in a state of limbo as they wait for an undetermined amount of time for deportation proceedings to conclude would be at least somewhat prejudicial. Alternatively, Respondents will face no prejudice absent a stay. Therefore, the Respondents have not met their burden. *See Williford*, 715 F.2d at 127.

## IV. CONCLUSION

For these reasons, the Court **OVERRULES** the objections, (ECF Nos. 20–21), **ADOPTS** the M&R, (ECF No. 19), and **DENIES** the Respondents' Motion to Dismiss, (ECF No. 10). As such, Petitioners' Emergency Motion for Ruling, (ECF No. 24), is **DENIED AS MOOT**. The Court further declines to stay this matter and **SETS** a telephonic status conference for **August 4, 2025, at 11:00 a.m**. The call-in information for the call is as follows: 304-461-4955, then dial 423 114 084#.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 23, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE